IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAURY DAVID MOORE,

    Petitioner,                   No. 2:11-cv-2718 CKD P

    vs.

VAMIL SINGH, Warden,

    Respondent.             ORDER DENYING PETITION

_____/

        Petitioner, a state prisoner, proceeds pro se with a third amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 spousal injury conviction in the Sacramento County Superior Court, case number 08F04065, on grounds of prosecutorial misconduct and ineffective assistance. The matter is fully briefed (Dkt. Nos. 20, 24, 30) and the parties have consented to jurisdiction by United States Magistrate Judge (Dkt. Nos. 4, 11).

                        FACTUAL AND PROCEDURAL BACKGROUND

        The California Court of Appeal, Third Appellate District, summarized the facts underlying petitioner's offense in an unpublished memorandum and opinion on direct appeal:

/////

/////

1

*Prosecution Case*

On April 26, 2008, at about 3:00 a.m., Sacramento Police Officer Derick Cannedy and his partner were dispatched to an apartment to investigate a report of "domestic violence in progress." When Oifficer Cannedy arrived, he met the victim, Giselle Wallace, at the front door of her apartment. He immediately observed that she was crying and had fresh blood on her face. Officer Cannedy saw objects on the ground that looked out of place because such objects would have been on a shelf or a table. He saw blood droplets on the kitchen floor and the refrigerator door and observed the remains of an eight-inch-by-10-inch picture frame on the floor with broken glass [lying] around the frame.

After noting that Wallace had a laceration above her left eye and that the eye was swollen almost completely shut, Officer Cannedy called for medical assistance. Officer Cannedy also took a preliminary statement from Wallace who appeared, in Officer Cannedy's opinion, to be capable of providing a statement even though he had detected a "slight odor of alcohol" on her breath.

Wallace told Officer Cannedy that, during a verbal argument, defendant (her husband) had thrown items all around the house and had broken a mirrored door in the master bedroom. Following the verbal argument, he pushed her down to the floor, hit her two to three times, and threw the picture frame at her, causing the cut to her eye. Wallace told Officer Cannedy that defendant lived with her in the apartment.

Officer Cannedy observed that, in the master bedroom, the mirrored closet door had been knocked off its tracks and the mirror glass had been broken. There were blood droplets all around the bed, on the pillowcase, and in the sink of the adjacent bathroom.

Wallace related that, after defendant assaulted her, he left the apartment and took her car keys and the only apartment key. She expressed concern that, because the only apartment key had been taken, she would be unable to lock or secure the apartment before being taken away for medical aid.

Wallace told Officer Cannedy that she did not know where defendant had gone. However, she added that she did not want to press charges against him. During the interview, Wallace never mentioned the name "Kenneth Jones."

Wallace was in the hospital for a couple of days and required four or five sutures to close the laceration above her eye. She also was treated for a bone fracture above the eye. The eye remained swollen for a week and a half. Medical records showed that Wallace had been treated for a six-centimeter laceration and multiple facial fractures. Those same records contained

2

Wallace's statement that she had been assaulted by defendant, her husband.

Less than two months later, at defendant's preliminary hearing on June 3, 2008, Wallace testified that she had been injured by her ex-boyfriend, Kenneth Jones, and not by defendant. Following her testimony, the prosecution called Officer Cannedy to testify about his conversation with Wallace.

Wallace's January 2010 trial testimony was consistent with her preliminary hearing testimony and inconsistent with her statements on the day of the incident. Wallace admitted that she was married to defendant at the time of the attack and at trial. She claimed that they were not living together and that he was residing in east Oakland at his grandmother's residence, but she did not know the exact address. Before moving to Oakland, defendant had resided in Sacramento. Wallace did not know the exact address. When asked about her statement to Officer Cannedy that defendant was living with her at the time of the assault, Wallace answered that she did not recall having made such a statement.

Wallace claimed that she had been drinking heavily on the night of the attack. Kenneth Jones, whom she had dated in 2005, showed up on her doorstep unexpectedly and "just kind of came in" to the apartment. Wallace does not know Jones's address, other than that he lives in New Orleans. Wallace testified that Jones seemed upset about Wallace's earlier actions in breaking off their relationship and also wanted to reclaim some jewelry he had given her. Jones then followed Wallace into her master bedroom where they began fighting. Wallace surmised that, after a few minutes, she ran to the telephone and called the police. Jones ran toward the door, and Wallace assumed that he left the area.

When the police arrived at her apartment, Wallace told them that the assailant was defendant, not Jones. She did so because she "was afraid of [her] husband finding out that [she] had been ...involved with another man" during "the course of [the prior] relationship."

At trial in January 2010, Wallace claimed that she still maintained a "good" relationship with defendant and had no plans to divorce him. She indicated that she had been visiting him regularly for the past two years while he was in custody, generally seeing him every other week. This exchange between the prosecutor and Wallace ensued:

"Q   He is obviously in jail, correct?

"A   Yes.

"Q   Have you been visiting him in jail?
"A   Yes

3

> "Q    When was the last time you visited him?
>
> "A    Um, Sunday.
>
> "Q    Sunday?
>
> "A    Yes. Yesterday
>
> "Q    Yesterday? Okay. Do you know about how many times you have visited him? If you can, I know it's hard to give an exact number, but in terms of since he has been – since he has been in jail, how many times have you been to visit him?
>
> "A    Well, he has been there since 2008. Um, wow, a lot. I don't know. Maybe once every other week maybe.
>
> "Q    That is about the average?
>
> "A    Average, maybe, yeah.
>
> "Q    And that is since he has been locked up, since [2008]?
>
> "A    Yes."
>
> Defense counsel did not object to the prosecutor's questions, move to strike the reference to jail, or request any sort of curative instruction.
>
> The jury was informed, both before and after Wallace's testimony, that it should not be biased against defendant because he had been arrested, charged with a crime, or brought to trial.
>
> *Defense*
>
> The defense rested without presenting evidence or testimony.

(Lodged Document ("LD")[1] 2 at 2-7.)

A jury convicted petitioner of infliction of corporal injury upon his spouse (Cal. Penal Code § 273.5(a)) and further found that he personally inflicted great bodily injury under circumstances involving domestic violence (Cal. Penal Code § 12022.7(e)). The trial court found

---

[1] See Notice of Lodging Document in Paper (Dkt. No. 25).

for sentence enhancement purposes that he had a previous manslaughter conviction and that he had served two prior prison terms (See Cal. Penal Code §§ 667(a), 667(b)-(I), 1170.12). Petitioner was sentenced to state prison for an aggregate term of 14 years. (Id. at 1.)

On appeal to the California Court of Appeal, Third Appellate District, petitioner raised the same grounds presented here. (LD 5.) The state appellate court affirmed the conviction and judgment, and the California Supreme Court denied a petition for review. (LD 2, 5, 6.) Petitioner sought habeas corpus relief in the Sacramento County Superior Court on a separate sentencing issue where relief was likewise denied. (LD 3, 4.)

Petitioner filed his original federal petition in this court on October 14, 2011. (Dkt. No. 1.) This action proceeds on his third amended petition filed July 19, 2012. (Dkt. No. 20.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

/////

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

6

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court presumes that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id. at 1097; Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

In addition, when a state court's decision on the merits does not satisfy the criteria set forth in § 2254(d), a federal habeas court conducts a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

II. Petitioner's Claims

   A. Prosecutorial Misconduct

In grounds one and two, petitioner claims the prosecutor committed misconduct during Ms. Wallace's examination by repeatedly referencing the fact that petitioner was in custody during trial, in violation of his right to due process (ground one) and right to a fair trial (ground two). (Dkt. No. 20 at 5.) Respondent contends such claims are procedurally barred in this court based on the state appellate court's imposition of an independent and adequate state procedural bar. (Dkt. No. 24 at 10.)

On direct appeal in the last reasoned state court decision applicable to these claims, the California Court of Appeal held:

> Defendant acknowledges that his trial counsel did not object to the prosecutor's questions nor did counsel move to strike the references to jail or otherwise request any sort of curative instruction. Nor does defendant claim to be within any of the foregoing exceptions to the forfeiture rule. Indeed, a timely objection and admonition could have cured any possible prejudice. Thus, defendant's claim of prosecutorial misconduct is forfeited on appeal. (People v. Prince (2007) 40 Cal.4th 1179, 1275; People v. Pahah, supra, 35 Cal.4th at p. 462.)

8

(LD 2 at 8.) Having found petitioner's claim of prosecutorial misconduct forfeited, the state court did not review the merits on appeal.

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977). As a general rule, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (quoting Beard v. Kindler, 558 U.S. 53 (2009)); Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Walker, 131 S. Ct. at 1127.

In order for a state procedural rule to be found independent, the state law basis for the decision must not be interwoven with federal law. Cooper v. Neven, 641 F.3d 322, 332 (9th Cir.), cert. denied 132 S. Ct. 558 (2011); Bennett v. Mueller, 322 F.3d 57, 581 (9th Cir. 2003). To be deemed adequate, the rule must be well established and consistently applied. Walker, 131 S. Ct. at 1128; Beard, 130 S. Ct. at 617. Even where the state rule is independent and adequate, an exception to the general rule exists if the prisoner can demonstrate either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman, 501 U.S. at 750.

If the state pleads the existence of an independent and adequate state procedural ground as an affirmative defense, the burden shifts to petitioner to place the adequacy of that procedural rule in issue, as "the scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner." Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003); King v. Lamarque, 464 F.3d 963, 967 (9th Cir. 2006) ("Bennett

requires the petitioner to 'place [the procedural default] defense in issue" to shift the burden back to the government"). The state retains the ultimate burden of proving adequacy of the asserted bar. Bennett, 322 F.3d at 585-86.

Respondent has adequately pleaded California's contemporaneous objection rule as an affirmative defense. See Id. at 586. Petitioner does not deny that trial counsel failed to raise a contemporaneous objection to the prosecutor's line of questioning and the record reflects that was the case. Petitioner does not allege that California's contemporaneous objection rule was unclear, inconsistently applied or not well-established as a general rule or as applied to him. See Id.; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002).

Respondent has adequately demonstrated that the state court's denial of petitioner's claim rested on an independent and adequate state procedural rule. Petitioner's claim is procedurally barred. Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (jury instruction claim procedurally barred for failure to object); Melendez, 288 F.3d at 1125; Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999); Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999) (prosecutorial misconduct procedurally barred for counsel's failure to contemporaneously object).

Petitioner further fails to demonstrate cause for the procedural default or that a miscarriage of justice would result absent review of the claim by this court. See Paulino, 371 F.3d at 1093; Vansickle, 166 F.3d at 957-58 (9th Cir. 1999). Under these circumstances, his claims regarding the prosecutor's references to his in-custody status during examination are procedurally barred in this court.

  B.  Ineffective Assistance

In grounds three and four, petitioner claims trial counsel rendered ineffective assistance of counsel by (1) failing to object to the prosecutor's improper line of questioning referencing his in-custody status (ground three) and (2) failing to request a protective instruction regarding same (ground four). (Dkt. No. 20 at 6.)

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. Strickland v. Washington, 466 U.S. 668, 690 (1984). Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 687, 697. "Surmounting Strickland's high bar is never an easy task," and review under the AEDPA is doubly deferential. Harrington, 131 S. Ct. at 787 (citing Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)). The relevant question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Harrington, 131 S. Ct. at 788. Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

### 1. Failure to Request Limiting Instruction

In the last reasoned state court opinion applicable to this claim, the California Court of Appeal, Third Appellate District, denied petitioner's ineffective assistance claim, holding, first, that petitioner had not shown counsel performed deficiently in failing to object. (LD 2 at 8.) The court reasoned:

> In this case, the appellate record does not reveal the tactical reason for defense counsel's failure to object. However, a satisfactory explanation readily appears. As noted, Wallace spoke to Officer Cannedy on April 26, 2008. At defendant's preliminary hearing less than two months later, Wallace testified that she had been injured by Kenneth Jones, not by defendant. Defense counsel could have foreseen that an objection would be futile because, in all probability, Wallace was about to testify- as she had done at the preliminary examination- that her assailant was Kenneth Jones, not defendant. Her extensive history of jail visits would become admissible to demonstrate bias even if her jail visit testimony technically was not admissible at the moment the questions were asked.

(LD 2 at 9-10.) The state court further noted that petitioner's ineffective assistance of counsel claim would be "more appropriately brought in a habeas corpus proceeding." (Id. at 10 (citing

People v. Mendoza Tello, supra, 15 Cal.4th at pp. 266-267).)  Petitioner did not, however, present an ineffective assistance claim on state habeas corpus.

"A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." See Bradshaw v. Richey, 546 U.S. 75, 76 (2005); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Here, the state court determined that Wallace's history of jail visits to petitioner was admissible to show bias, and that a defense objection would have been futile.  These state law determinations bind this court.  Id.  Under these circumstances, a reasonable argument certainly exists that counsel satisfied Strickland's deferential standard and the state court's rejection of petitioner's ineffective assistance claim is not contrary to, or an unreasonable application of clearly established federal law.  See Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997) ("Because it is not at all clear that [the course of action at issue] was available, counsel's failure... did not fall below an objective standard of competence.); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").  Nor is it based on an unreasonable determination of the facts in the appellate record, to which the state court was confined.  See People v. Cunningham, 25 Cal.4th 926, 1003 (2001) ("A defendant who raises [ineffective assistance] on appeal must establish deficient performance based upon the four corners of the record.").

          2.      Failure to Request Protective Instruction

As to counsel's failure to request a protective instruction, the state court held that ineffective assistance was not shown because the omission could not have been prejudicial:

> CALCRIM No. 2.04 provides in relevant part: "The fact that physical restraints have been placed on the defendant is not evidence.  Do not speculate about the reason.  You must completely disregard this circumstance in deciding the issues in this case.  Do not consider it for any purpose or discuss it during your deliberations."

> The bench notes for CALCRIM No. 204 provide in part, "If the restraints are not visible, do not give this instruction unless requested by the defense." Here, defendant was not placed in visible restraints, and trial counsel's failure to request the pattern version of CALCRIM No. 204 could not have been ineffective.
>
> Perhaps recognizing that the pattern instruction was not applicable, defendant next contends his trial counsel should have requested the modified version of CALCIJ NO. 1.04 set forth in People v. Stevens (2009) 47 Cal.4th 625 (Stevens), at page 641, footnote 8. Once again, we are not persuaded.
>
> The Stevens' instruction provided: "The fact that the Defendant is in custody must not be considered by you for any purpose. That is not evidence of guilt and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why he is in custody. In determining the issues in this case, disregard this matter entirely."
>
> Defense counsel's failure to request the Stevens instruction could not have been prejudicial. Unlike Wallace's statements to the investigating officers, her trial testimony was not credible. Examples include the following details: (1) defendant, her husband, was not living with her, but had been residing at two different residences in east Oakland and Sacramento; (2) she did not know the addresses of these places where defendant was residing; (3) the reason she identified her husband to police was to hide the fact that she had a boyfriend before they were married; and (4) the real perpetrator of the attack was an ex-boyfriend from her past, whose identity she did not disclose to police that night, and whose whereabouts are unknown to her. There is no reasonable probability that the jurors would have given her testimony greater weight had they been instructed to disregard the fact that defendant had been in custody since the attack.
>
> Thus, there is no reasonable probability that, but for counsel's failure to request the Stevens' instruction, the result of the proceeding would have been any different. (People v. Avena, supra, 13 Cal.4th at p. 418.)

(LD 2 at 10-12.)

The state court's finding of no prejudice is objectively reasonable. As the state court held, the prosecution's case was strong and the defense case very weak. Officer Cannedy testified about his observations at Wallace's apartment including broken furniture, blood and Wallace's facial injuries, and as to her detailed statement that her husband, Maury Moore, who lived with her there in the apartment, had assaulted her by pushing her down to the floor, hitting

her in the face, and then leaving with the only key to the apartment. (RT at 171-81.) Wallace's subsequent recantation does not substantially diminish the weight of this evidence where the rest of her testimony was wholly unbelievable for the reasons set forth by the state court. In addition, Wallace had indicated on the evening of the assault that she "didn't want to press charges" against her husband. (RT at 180.) Moreover, Wallace's medical records were admitted into evidence over the defense's objection; those records also contained her statement that her husband had assaulted her. (RT at 204-06.) The defense rested without presenting evidence.

The trial court gave the jury a preliminary instruction to ignore the fact that petitioner had been arrested, charged, or brought to trial. (Reporter's Transcript ("RT") at 67.) The same admonition was repeated in the final charge to the jury. (RT at 246.) It is presumed that the jurors followed these instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing Richardson v. Marsh, 481 U.S. 200, 206 (1987)). There is no reasonable probability that an additional instruction to the jury to disregard references to petitioner's in-custody status would have resulted in a more favorable outcome in this case, and trial counsel's failure to request such an instruction does not undermine confidence in the verdict. Accordingly, the state court's rejection of this claim for lack of prejudice is not contrary to, or an unreasonable application of clearly established federal law, nor based on an unreasonable determination of the facts in the appellate record. No relief is available.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's application for writ of habeas corpus (Dkt. No. 20) is DENIED; and

/////

/////

/////

2. For the reasons discussed, the court declines to issue a certificate of appealability as referenced in 28 U.S.C. § 2253.

Dated: May 21, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
moor2718.157